AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Nebraska

**SEALED**

United States of America )
v. )
) Case No. 8:20MJ283
)
JONATHAN DANIEL ROONEY )
)
)
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 16, 2020__ in the county of __Thurston__ in the _____ District of __Nebraska__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1112 & 1153 | Manslaughter in Indian Country |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

SA Samuel Roberts, FBI
*Printed name and title*

☐ Sworn to before me and signed in my presence.

☑ Sworn to before me by telephone or other reliable electronic means.

Date: 5/29/2020

*Judge's signature*

City and state: Omaha, Nebraska

Michael D. Nelson, U.S. Magistrate Judge
*Printed name and title*

### Affidavit in Support of an Arrest Warrant for

### JONATHAN DANIEL ROONEY

I, Samuel Roberts, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. This affidavit is in support of an arrest warrant for JONATHAN DANIEL ROONEY (hereinafter Rooney), A Native American male, enrolled with the Winnebago Tribe of Nebraska, with a date of birth of September 4, 1999.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed since January 6, 2019. Since June of 2019, I have been assigned to the Omaha, Nebraska, FBI Division. In the course of my official duties I am charged with the investigation of crimes occurring on the Indian Reservations of Nebraska, including the Winnebago Indian Reservation, located in Thurston County, Nebraska, within the District of Nebraska.

3. The facts in this affidavit come from information obtained from my investigation, from my training and experience, and information obtained from other law enforcement agents and witnesses. This affidavit is intended only to show that there is sufficient probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts, as set forth in this affidavit, there is probable cause to believe that Rooney has committed a violation of Title 18 U.S.C § 1112 & 1153, Manslaughter in Indian Country.

### PROBABLE CAUSE

5. On May 17, 2020, Chief of Police (COP) Jason Lawrence, (hereinafter "COP Lawrence"), of the Winnebago Police Department (WPD), requested the assistance of the FBI to investigate a possible homicide that occurred on or about May 16 or 17, 2020, on the Winnebago Indian Reservation, of Kozee Decorah, (hereinafter "Decorah"), a Native American (Indian) female. It was believed that Rooney, who was Decorah's boyfriend, and father of her children, was involved with Decorah's death, which occurred in a remote, wooded area on the Winnebago Indian Reservation, Winnebago, Nebraska.

6. COP Lawrence reports that WPD dispatch received a call from Decorah at approximately 1950 hours on May 16, 2020, stating that the vehicle she, her boyfriend, Rooney, and their infant son, were travelling in had gotten stuck on a muddy road in a remote area of the Winnebago Indian Reservation. Winnebago Conservation Officers Peter Snowball and Benjamin St. Cyr were dispatched to attempt to find Decorah, but they were unable to locate Decorah, Rooney, or the infant. Winnebago Conservation Officers Snowball and

1

St. Cyr did, however, locate the stuck vehicle, which was a GMC Yukon, with Nebraska license plate 55-E812. COP Lawrence said the address where they were dispatched to is approximately BIA Road 50 and also known as Honey Creek Road within the exterior boundaries of the Winnebago Indian Reservation.

7. After being unable to find Decorah, Winnebago Conservation Officers Snowball and St. Cyr traveled to Walthill, Nebraska, located on the Omaha Nation Indian Reservation, at approximately 2308 hours to attempt to see if Decorah had made it home. Winnebago Conservation Officers were unable to locate Decorah or Rooney at the residence they shared.

8. At approximately 2323 hours, Winnebago Firefighters Jonathan Grant and Kyle Urbanec went to the BIA Road 50 area to assist in the search for Decorah. At approximately 2348 hours, Winnebago Conservation Officers Snowball and St. Cyr returned to the BIA Road 50 area to also continue to search. Winnebago Conservation Officers searched around the area and, while doing so, noticed a fire. Winnebago Conservation Officers Snowball and St. Cyr went to a cabin and observed a fire in an outhouse located next to the same cabin.

9. At approximately 0010 hours on May 17, 2020, Winnebago Conservation Officer Snowball went into the cabin and found Rooney naked under a blanket with an infant child, appearing to have been sleeping on a mattress on the floor. The child was the four month old son of both Rooney and Decorah.

10. While at the cabin, Snowball and Urbanec noticed what appeared to be bones in in the fire that was burning in what was the outhouse located outside the cabin. Upon closer examination they observed what they believed to be a human skull and notified WPD.

11. Rooney and the infant were transported to WPD by Firefighter Jonathan Grant as part of providing assistance to Rooney and the infant child, and to find out where Decorah was. Rooney was not under arrest. Rooney had only a blanket on. At the WPD, Officer Anthony Walker observed Rooney to have a smear of blood or bruising on his arm and scratches on his left shoulder. Officer Walker also observed an injury to Rooney's right cheek. At that time, Officer Walker asked Rooney if he knew where Decorah was. Rooney said he did not. Rooney was detained.

12. At 0323 hours on May 17, 2020, Officer Walker and Your Affiant left the WPD and went to the location of the cabin and outhouse. Your Affiant observed a skull and ribs of a human being in the remaining embers of the fire where the outhouse would have been. The outhouse was approximately six feet from the cabin. Your Affiant went into the cabin and observed blood droplets on the floor of the cabin and on the door of the cabin. Your Affiant also observed blood on a piece of wood that was placed on top of a gas grill. The gas grill was located inside the cabin next to the mattress where Rooney had been located sleeping. The blood on the wood appeared to be a handprint.

13. Your Affiant and Officer Walker left the scene at the cabin at approximately 0506 hours and then returned to the WPD at approximately 0523 hours. Your Affiant spoke with

2

8:20-cr-00104-RFR-MDN   Doc # 1   Filed: 05/29/20   Page 4 of 5 - Page ID # 4

Rooney after returning from the scene. Rooney waived his Miranda rights and agreed to speak to Your Affiant. Rooney told Your Affiant that he and Decorah got stuck and that he found the cabin and started a fire in the grill located in the cabin while Decorah attempted to get help. Rooney said his clothes were wet from being out in the rain, so Rooney said he had hung his clothes up inside the cabin to dry. Rooney said he and Decorah argued and said Decorah was yelling at him asking him if he was high. Rooney denied that he was high or had been using alcohol. Rooney stated he was on probation and has not been drinking or doing drugs. Rooney said the argument turned physical and Decorah hit him with something and then Rooney pushed Decorah. Rooney said he pushed Decorah out of the cabin and shut the door and went to lay down on the mattress. Rooney stated the door to the cabin did not lock. Rooney said the next thing he was aware of was an officer shining a flashlight in his face. Your Affiant was aware that when the WPD Conservation Officers located Rooney, he had no clothes on and was completely nude and the infant child was also on the mattress with Rooney. Rooney stated Decorah has cut herself across her wrists with a knife to the point of bleeding on multiple occasions, and then blamed Rooney for it. Rooney suggested she does this in an effort to get her kids taken away from Rooney. Rooney also stated that he thought maybe he had been drugged and was set up by Decorah to go to prison for murdering her. Rooney also stated he had text messages on his phone from Decorah stating that he had tried to kill Decorah.

14. During the conversation with Rooney, Your Affiant observed Rooney's demeanor as relatively calm. Your Affiant did not observe Rooney to appear to be under the influence of alcohol. Further, Rooney submitted to a preliminary breath test at the WPD, which resulted in a score of 0.000. Rooney did become somewhat upset when Your Affiant informed Rooney that Your Affiant observed a human skull in the fire and blood all over the cabin. Your Affiant informed Rooney that the FBI Evidence Response Team (ERT) would be going to the location of the cabin and outhouse and processing the area for evidence. Your Affiant asked Rooney about whether there was a fight and things got out of control and Rooney said that he was "backed into a corner." After asking Your Affiant how Your Affiant could help Rooney, Rooney eventually requested the presence of a lawyer and the interview was immediately terminated.

15. On May 17, 2020, the FBI ERT collected items from the outhouse, to include the skeletal remains and a burned cell phone, collected items from the cabin, and collected items from the GMC Yukon, which included a gas can and chainsaw.

16. On May 19, 2020, Your Affiant attended the autopsy conducted on the remains that were retrieved from the smoldering outhouse off of BIA Road 50. The forensic pathologist, Dr. Erin Linde, stated that the body was too far burned for the examiner to determine if there was any pre-thermal trauma to the skin, organs, and bones. Dr. Linde was able to locate a clump of congealed blood from various parts of the remaining brain matter and organs. It is currently unclear if any of these samples will be viable for DNA comparison testing.

17. On May 26, 2020, Your Affiant attended the oral autopsy of the skull and remains collected at the crime scene, conducted by Dr. John Filippi, a forensic dental consultant.

3

Dr. Filippi concluded that the body labeled as ME 20-345, which contained the remains recovered from the outhouse, was Kozee Decorah. Dr. Filippi positively identified her through forensic dental comparison analysis.

## CONCLUSION

18. There is probable cause to believe that Rooney as committed a violation of Title 18, U.S.C. § 1112 and 1153, Manslaughter in Indian Country.

19. I further request the Court order that all papers in support of this application be sealed until further order of the Court. These documents discuss an ongoing criminal investigation in which all of the information is not known to the public nor to the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Samuel Roberts
Special Agent
Federal Bureau of Investigation

Sworn to before me by reliable electronic means:

Date: 05/29/2020

City and State: Omaha, Nebraska

Michael D. Nelson, U.S. Magistrate Judge

4