IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN DANIEL ROONEY,<br><br>Defendant. | **8:20CR104**<br><br>**MEMORANDUM<br>AND ORDER** |

This matter is before the Court on defendant Jonathan Daniel Rooney's ("Rooney") Motion to Suppress Statements (Filing No. 41) he made to Special Agent Samuel Roberts ("Special Agent Roberts") of the Federal Bureau of Investigation ("FBI") and Officer Anthony Walker ("Officer Walker") of the Bureau of Indian Affairs Office of Justice Services over the course of four interviews on or about May 17, 2020.  For all four interviews, Rooney was handcuffed in the backseat of a police cruiser wearing only a small blanket wrapped around his waist.  In Rooney's view, his statements were taken in violation of his Fifth Amendment privilege against self-incrimination.  *See* U.S. Const. amend. V*; Miranda v. Arizona*, 384 U.S. 436, 471 (1966).  Rooney asks the Court to prohibit the government from using his statements in its case in chief and to impeach Rooney's credibility should he choose to testify.

In accordance with 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), the Court referred the motion to a magistrate judge,[1] who held a two-part evidentiary hearing.  At the hearing, Special Agent Roberts and Officer Walker both testified about their interviews of Rooney.  The magistrate judge also received in evidence audio recordings of the last three interviews and a signed FBI Advice of Rights form.

---

[1]The Honorable Michael D. Nelson, United States Magistrate Judge for the District of Nebraska.

On February 12, 2021, the magistrate judge issued a Findings and Recommendation (Filing No. 67) recommending this Court deny Rooney's motion.  More specifically, the magistrate judge concluded the motion was mooted in part by the government's concessions that it would not use Rooney's first statement for any purpose and would not use his second and fourth statements in its case in chief.  The magistrate judge further concluded Rooney's second and fourth statements could be used for impeachment purposes because they were voluntarily made.  *See Harris v. New York*, 401 U.S. 222, 225-26 (1971) (holding that a voluntary statement that is inadmissible in the prosecution's case in chief under *Miranda* may still be used to impeach the defendant's credibility); *United States v. Magallon*, 984 F.3d 1263, 1284 (8th Cir. 2021) (voluntariness).

With respect to Rooney's third interview, Rooney argued his statements should be excluded under *Missouri v. Seibert*, 542 U.S. 600, 613-14 (2004), because Special Agent Roberts's failure to give Rooney *Miranda* warnings before the second interview rendered his subsequent warnings ineffective and tainted the third interview.  The government countered that *Seibert* did not apply because the officers did not intentionally or deliberately employ a two-step interrogation technique to circumvent *Miranda*.  *See United States v. Black Bear*, 422 F.3d 658, 664 (8th Cir. 2005).  According to the government, Rooney's statements from the third interview are admissible under *Oregon v. Elstad*, 470 U.S. 298 (1985), because they were voluntary.

The magistrate judge determined that *Elstad* applied, concluding Special Agent Roberts should have known to Mirandize Rooney before interrogating him the first time, but Special Agent Roberts's "initial failure to warn [Rooney] was not a deliberate, calculated, intentional strategy to circumvent *Miranda* and provoke a confession." Turning to whether Rooney's statements were knowing and voluntary, the magistrate judge noted that when Special Agent Roberts did provide *Miranda* warnings, he did not verbally advise Rooney of his right to remain silent or clearly explain the FBI Advice of Rights form before Rooney signed it.  The magistrate judge noted that Rooney did not raise that

issue or "argue his waiver was made unknowingly—only that his statements were involuntary." The magistrate judge nonetheless observed that the form clearly advised Rooney of his *Miranda* rights and determined that Rooney's statements from the third interview were—based on the totality of the circumstances—"made knowingly and voluntarily" and should be admitted.

On February 26, 2021, Rooney timely objected (Filing No. 68) to the magistrate judge's findings and recommendation. Rooney does not object to the partial finding of mootness as to the first, second, and fourth statements based on the government's concession that it would not use them in its case-in-chief. Rooney does, however, object to the magistrate judge's determination that Special Agent Roberts's "conduct during the interrogation process was unintentional and not designed to circumvent *Miranda* warnings by deliberate delay in order to provoke a confession." According to Rooney, the magistrate judge failed "to consider the totality of the evidence of [Special Agent Roberts's] intent to subvert Rooney's right to remain silent both by interrogating him without *Miranda* in the first instance and then . . . by failing to advise him of his right to remain silent."[2]

Rooney also contends he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights and agree to speak with Special Agent Roberts before the third interview. He likewise objects to the finding that "statements one, three and four were voluntarily given."

The government acknowledges Special Agent Roberts made significant errors but denies any nefarious motive. In the government's view, there is no evidence Special Agent "Roberts was calculated and *deliberate* in an attempt to circumvent *Miranda*." As to the

---

[2]Picking up the issue first raised by the magistrate judge, Rooney asks the Court to consider what he calls Special Agent Roberts's failure "to fully and accurately advise [Rooney] of ALL of his rights, including the essential right to remain silent," in conjunction with his "other arguments and already admitted evidence." The Court has thoroughly considered that issue.

omission of Rooney's right to remain silent, the government emphasizes that he "did receive the required warnings in writing."

The Court has carefully reviewed de novo Rooney's arguments and objections and concludes his motion to suppress should be denied. *See* 28 U.S.C. § 636(b)(1)(C) (requiring de novo review "of those portions of the report or specified proposed findings or recommendations to which objection is made"); Fed. R. Crim. P. 59(b)(3) (same). The Court finds no error in the magistrate judge's thorough analysis of the pertinent issues under governing Supreme Court and Eighth Circuit precedent. Although Special Agent Roberts's methods and tactics leave much to be desired, the Court agrees with the magistrate judge that Special Agent Roberts did not impermissibly conduct a deliberate two-step interrogation technique to circumvent *Miranda* and provoke a confession. *See*, *e.g.*, *Magallon*, 984 F.3d at 1283.

It is a much closer question as to whether Rooney knowingly waived his *Miranda* rights before the third interview given Special Agent Roberts's omission of the right to remain silent from his verbal recitation of the *Miranda* warnings. Special Agent Roberts undoubtedly failed in multiple ways in the course of his interactions with Rooney. But the Court ultimately concludes Rooney's written waiver "was voluntary, knowing, and intelligent" under the totality of the circumstances in this case. *See United States v. Figueroa-Serrano*, 971 F.3d 806, 814 (8th Cir. 2020). The Court further agrees with the magistrate judge that Rooney's challenged statements were voluntarily given for the reasons stated in the Findings and Recommendation.

That is not to say, however, that Rooney doesn't raise some salient points about the unsettling circumstances of his arrest and interrogation. He does. The Court agrees with Rooney and the magistrate judge that several aspects of this case are troubling. A suspect should not have to spend hours naked and handcuffed in a cruiser with nothing more than a small blanket to cover him. No well-trained and conscientious FBI agent would launch

4

into a custodial interrogation without providing the requisite *Miranda* warnings or omit the seminal right to remain silent from his recitation of the suspect's rights.  Nor should a defendant charged by the U.S. government have to root out missing FBI recordings of his statements, particularly when those charges expose the defendant to life in prison.

At the hearing, Special Agent Roberts's attributed some of his mistakes to "negligence." Maybe that's it.  We all make mistakes.  And not every mistake is a violation of a defendant's constitutional rights.  But when all the mistakes inure to the government's benefit, it could raise serious questions about an agent's integrity and credibility.  The Court is also wary of rewarding government "negligence" in the field with favorable rulings in court.   While perhaps not as pernicious as the intentional or deliberate circumvention of the defendant's privilege against self-incrimination, the practical effect of such mistakes on the defendant's rights can be largely the same.  It is certainly not all that different from the criminal defendant's perspective.

At the very least, courts should not incentivize improper or inadequate training and poor performance, particularly at the expense of a suspect's constitutional rights.  But even with all that in mind, the Court concludes Rooney's motion to suppress must be denied in these particular circumstances.

In view of the foregoing,

IT IS ORDERED:

1.    Defendant Jonathan Daniel Rooney's objections (Filing No. 68) are overruled.

2.    The magistrate judge's Findings and Recommendation (Filing No. 67) is accepted.

3.    Rooney's Motion to Suppress Statements (Filing No. 41) is denied.

Dated this 2nd day of April 2021.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge