IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **8:20CR104** |
| v. | |
| JONATHAN DANIEL ROONEY, | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter is before the Court on defendant Jonathan Daniel Rooney's ("Rooney") "Objection to Government's Proposed 404 (B) Evidence" (Filing No. 87). *See* Fed. R. Evid. 404(b). In his objection, which the Court treats as a motion in limine, Rooney seeks an order prohibiting "the government from adducing evidence of allegations of prior domestic abuse in their case-in-chief."

## I.  BACKGROUND

Rooney is charged in a two-count Second Superseding Indictment (Filing No. 49) relating to the death of Kozee Decorah ("Decorah"), a Native American (Indian) female,[1] on or about May 16, 2020. Count I charges Rooney with unlawfully killing Decorah, in violation of 18 U.S.C. §§ 1111 and 1153. Count II charges Rooney with a violation of 18 U.S.C. § 1512(c)(1) for corruptly altering, destroying, mutilating, and concealing a record or other object, namely, a cell phone, Rooney's clothing, and Decorah's body. Both offenses are alleged to have occurred within the exterior boundaries of the Winnebago Indian Reservation. Trial is set for December 6, 2021.

Rooney seeks to exclude certain (or all) testimony by each of seven witnesses identified by the government: Myshell Leannrose Mike ("Mike"), Sarah Dobbs ("Dobbs"),

---

[1]Decorah was an enrolled member of the Ho-Chunk Nation in Wisconsin but moved to the Winnebago Reservation in Nebraska to be with Rooney.

Navada Whitewing ("Navada"), Rhea Jean Sanchez ("Sanchez"), Kira Eve Hoefling ("Hoefling"),[2] Stella Decorah ("Stella"), and Maribeth Whitewing ("Maribeth").[3]  Due to the number of witnesses, the nature of their testimony, and the nature of the case, the Court held a hearing on August 3, 2021, August 16, 2021, and September 1, 2021, to determine the admissibility of the challenged testimony.

Having now heard and considered the testimony of the seven witnesses and considering the arguments of counsel, the Court finds Rooney's motion should be granted in part and denied in part.

## II.    DISCUSSION

The challenged evidence[4] is of two types.  First, the government seeks to elicit witness testimony regarding first-hand observations of prior arguments and physical altercations between Rooney and Decorah before her death.  The second type of evidence proffered involves several hearsay statements Decorah allegedly made to various witnesses before her death.

Rooney's arguments primarily rest on the credibility of these witnesses.  Although the testimony heard by the Court contains a number of significant inconsistencies, credibility is "uniquely within the province of the jury."  *United States v. Smith*, 4 F.4th 679, 687 (8th Cir. 2021).

---

[2]In its post-hearing brief (Filing No. 116), the government concedes that it will not call Hoefling to testify as to any prior incidents or statements from Decorah.  The motion, as it pertains to Hoefling, is denied as moot.

[3]Rooney also had two witnesses testify, seemingly to attack the credibility of some of the foregoing witnesses.

[4]Many of the witnesses do not recall dates but seek to testify to the timing of certain events by pointing to the ages of Decorah's children at the time.  M.D., Decorah's oldest child, was born on July 9, 2016 and was three years old at Decorah's death.  Decorah's son was born on March 12, 2018.  Many of the events alleged occurred (or statements were made) more than three years before Decorah's death.

### A.       Federal Rule of Evidence 404(b)(2)

Federal Rule of Evidence 404(b)(1) generally prohibits the use of evidence of any other crime, wrong or act to prove a person's character in order to show that on a particular occasion that person acted in accordance with that character.   However, under Rule 404(b)(2), such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."   It is for this limited purpose that the government seeks to adduce the proffered evidence.

The initial inquiry is whether proposed propensity testimony is admissible.   "[F]or evidence of prior bad acts to be admissible under Rule 404(b), the government must prove, by a preponderance of the evidence, that the defendant committed the acts."   *United States v. Loveless*, 139 F.3d 587, 592 (8th Cir. 1998).   To meet its burden, the government must adduce sufficient evidence to permit a jury to "reasonably conclude that the acts occurred and that the defendant was the actor."   *Id.* (quoting *United States v. Robinson*, 110 F.3d 1320 (8th Cir. 1997)).

Evidence may "be admitted if it is: '(1) relevant to a material issue raised at trial; (2) similar in kind and close in time to the crime charge; (3) supported by sufficient evidence to support a jury finding that [Rooney] committed the other act; and (4) its probative value is not substantially outweighed by its prejudicial value.'"   *United States v. Fechner*, 952 F.3d 954, 961 (8th Cir. 2020) (quoting *United States v. Heidebur*, 122 F.3d 577, 580 (8th Cir 1997)).   "Rule 404(b) is a rule of inclusion; it allows a court to admit evidence of prior bad acts unless it tends to prove only a defendant's criminal disposition."   *Loveless*, 139 F.3d at 591.

### B.       Federal Rules of Evidence 801 and 803(1), (2), and (3)

Rule 801 defines hearsay as a statement that:

(1) the declarant does not make while testifying at the current trial or hearing; and

(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

As a starting point, the statements at issue here are clearly hearsay under Rule 801.

Rule 803 sets forth exceptions to the general rule against hearsay. The three exceptions advanced by the government are:

(1) **Present Sense Impression.** A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.

(2) **Excited Utterance.** A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.

(3) **Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered . . .

### 1.    Present Sense Impression

"The present-sense-impression exception to the hearsay rule is rightfully limited to statements made while a declarant perceives an event or immediately thereafter." *United States v. Manfre*, 368 F.3d 832, 840 (8th Cir. 2004). The Eighth Circuit has "decline[d] to expand it to cover a declarant's relatively recent memories." *Id.* (finding "too much time had passed . . . to call the transaction a present-sense impression," particularly where "there was an intervening walk or drive between the time of the" subject discussion and when it was relayed to the witnesses).

### 2.    Excited Utterance

Rule 803(2)'s excited-utterance exception is based on the belief that the excitement brought on by an event temporarily removes the ability to consciously fabricate a story. *See*, *e.g.*, *United States v. Sewell*, 90 F.3d 326, 327 (8th Cir. 1996). "In other words, statements made by a declarant while that declarant remains under the stress or shock of

4

an event retains a 'guarantee of trustworthiness' that is not present when the declarant has the opportunity for reflection and deliberation."  *United States v. Graves*, 756 F.3d 602, 605 (8th Cir. 2014) (quoting *Brunsting v. Lutsen Mtns. Corp.*, 601 F.3d 813, 817 (8th Cir. 2010)).

In deciding "whether a declarant remains 'under the stress of excitement' caused by the event when the declarant makes the statement, courts consider several factors: '[1] the lapse of time between the startling event and the statement, [2] whether the statement was made in response to an inquiry, [3] the age of the declarant, [4] the physical and mental condition of the declarant, [5] the characteristics of the event, and [6] the subject matter of the statement.'"  *Id.* (brackets in original) (first quoting Rule 803(2), then quoting *United States v. Clemmons*, 461 F.3d 1057, 1061 (8th Cir. 2006)).  They "also consider 'whether the declarant's stress or excitement was continuous from the time of the event until the time of the statements.'"  *Id.* (quoting *United States v. Wilcox*, 487 F.3d 1163, 1170 (8th Cir. 2007)).

### 3.    Then-Existing Mental, Emotional, or Physical Condition

For the then-existing mental, emotional, or physical condition exception to apply under Rule 803(3), the challenged statement must "be contemporaneous with the declarant's 'then existing' state of mind."  *United States v. Dierks*, 978 F.3d 585, 593 (8th Cir. 2020) (quoting *United States v. Naiden*, 424 F.3d 718, 722 (8th Cir. 2005)).  "[S]ubstantial contemporaneity of event and statement" serves to "negate the likelihood of deliberate or conscious misrepresentation."  *Id.* (quoting *Naiden*, 424 F.3d at 722).

Under this exception, a statement must not look backward or describe a declarant's past memory or belief about another's conduct.  *United States v. Carmichael*, 232 F.3d 510, 521 (6th Cir. 2000).  Any statement to be admissible must be limited to a declaration establishing the *declarant's* state of mind but not the facts which caused that state of mind.  *See United States v. Joe*, 8 F.3d 1488, 1492 (10th Cir 1993) (deciding that a victim's

statement that she feared the defendant would be admissible under the state-of-mind exception but the reasons she feared the defendant would not be).

### C.   Myshell Mike

Mike describes herself as Decorah's best friend.  Mike knew Decorah for approximately fourteen years.  Mike had a number of conversations with Decorah relating to her relationship with Rooney and, on a number of occasions, drove from her home in Wisconsin to Nebraska to bring Decorah back to Wisconsin.

The government concedes some of Rooney's objections[5] but posits that Mike's testimony regarding a situation in which Decorah was running from Rooney, should be allowed either under Rule 803(1) or (2).  More specifically, the government seeks to offer testimony from Mike that during a telephone call with Decorah, she could hear the wind blowing and Decorah breathing heavily.  Mike asked Decorah what was going on and Decorah replied, "Jonathan was chasing me" and was trying to run her over.  To the extent that the statement is contemporaneous with "being chased," it falls within the Rule 803(1) as a present-sense impression.

The government next contends that the testimony is admissible under Rule 404(b) as proof of motive, opportunity, intent, knowledge and absence of mistake or lack of accident.  While the Court is concerned about the time gap (and lack of specificity as to when this telephone conversation allegedly occurred), the evidence will be allowed under Rule 404(b)(2).  *See*, *e.g.*, *United States v. Patino*, 912 F.3d 473, 477 (8th Cir. 2019) (requiring a large gap of time before Rule 404(b) evidence is rendered irrelevant).

---

[5]The government concedes that a videoconference during which Mike indicated that Decorah made certain statements and testimony that Mike observed a bruise on Decorah's face likely is not admissible and does not fit within any hearsay exception and it therefore concedes such testimony will not be offered.  Rooney's motion as it pertains to that testimony is denied as moot.

### D.     Sarah Dobbs

Dobbs, also from Wisconsin, had known Decorah since 2011 or 2012 when Dobbs was a youth worker working with Decorah and Navada.  As Rooney repeatedly argues, Dobbs's testimony is inconsistent with the testimony of other witnesses, primarily Navada. While the inconsistencies are concerning, the Court does not agree with Rooney's demand that Dobb's testimony be excluded as not credible.

Dobbs's testimony does not rely upon hearsay but is based on her reported observations of three incidents involving Rooney and Decorah.  The first incident involved an argument between Rooney and Decorah at a gas station en route to Denver, Colorado, in 2015 or 2016.  Dobbs testified she observed Rooney hit Decorah causing her to bleed.

The second incident involved Dobbs allegedly observing Rooney choking Decorah at a hotel room in Denver.[6]

The third incident involved Rooney allegedly assaulting Decorah while at Dobbs's house in Wisconsin.  Dobbs testified she saw Rooney head-butt Decorah causing her to bleed.

The timing of these incidents relative to the crime charged is concerning, but the Court finds that Dobbs's testimony is admissible under Rule 404(b)(2).  *See United States v. Johnson*, 860 F.3d 1133, 1142 (8th Cir. 2017) (admitting testimony of the defendant's prior assaults of the alleged victim to "help explain the history of" their relationship). Rooney will have ample opportunity on cross-examination to address any perceived inconsistencies and credibility issues.

---

[6]Dobbs could not recall if this was the same Denver trip described above, as they traveled together to Denver on more than one occasion.

7

### E.      Navada Whitewing

Navada, also from Wisconsin, identifies herself as a friend of Decorah since childhood.   Navada was in a romantic relationship with Dobbs at the time of the incidents about which Dobbs seeks to testify.[7]   Navada's recollections of those events differ substantially from those of Dobbs.  While that may present problems for the government's case, it does not call for the exclusion of evidence.

The government next seeks to offer testimony from Navada about a call from Decorah during which Decorah stated she was out in the middle of nowhere and Rooney was ripping cords out of her Jeep and hitting her.  The testimony is admissible under Rule 803(1) as a present sense impression and is admissible under Rule 404(b)(2).

The government also seeks to elicit testimony from Navada wherein she allegedly broke up a physical fight between Decorah and Rooney that resulted in Decorah having a bloody nose.[8]  That testimony, based on Navada's actual observations, will be allowed and is proper Rule 404(b)(2) evidence.

### F.      Rhea Jean Sanchez

Sanchez is Decorah's sister.  She also resided in Wisconsin.  For about a six-to-seven-month period in 2017, Decorah, Rooney, and their young child M.D., lived with Sanchez.  The government seeks to have Sanchez testify about an altercation between Rooney and Decorah at Sanchez's home.  Sanchez testified Decorah was attempting to get inside the bedroom that she and Rooney occupied but Rooney refused to let her in.  Once Decorah was able to get inside the room, Rooney repeatedly pushed her down and tried to

---

[7]The government now concedes a phone call in which Decorah said she was running and told Navada to come and get her will not be offered.  Navada agrees that she did not know the circumstances of the running ("I didn't know if she was running from him, or just drunk running.").  Rooney's motion, as it pertains to this evidence, is denied as moot.

[8]Navada testified she wasn't present for any alleged head-butt but did see blood on Decorah and on a blanket she was holding.  She did observe the interactions between Decorah and Rooney that followed.

hit her.  Decorah was kicking Rooney at the same time.  That was the only physical altercation that Sanchez allegedly observed between Rooney and Decorah during the time they lived with her.[9]  This evidence, while it shows some propensity for violence between Rooney and Decorah, may be similar to the prior altercations discussed and may be proper under Rule 404(b)(2), but under Rule 403, its probative weight, in the situation described by Sanchez, is outweighed by the prejudicial effect of that evidence, given the two-way nature of the domestic violence described.[10]

The government also seeks to have Sanchez testify that Rooney had disclosed to Sanchez, that Rooney had "some kind of gangster friends or cholas, Mexican – I don't know Mexican native or somebody that were looking for her to beat her up or to kill her." The comments were simply recounting, after the fact, a statement Decorah claims Rooney made.  Such testimony is hearsay and does not—under these circumstances—fall within the hearsay exception argued by the government under Rule 803(3).  The conversation purportedly occurred sometime around Sanchez's birthday and while Decorah was staying with Sanchez's sister.  Again, even if admissible under Rule 404(b), the Court would exclude the statement under Rule 403.

### G.    Stella Decorah

Stella, also from Wisconsin, is another of Decorah's sisters.  The government seeks to have Stella testify that Decorah told her that Rooney stated that "they would need a body if they were ever going to charge me."  Stella testified that Decorah was "frazzled" when she walked from Sanchez's house to Stella's house (about 1 mile) to "vent" about Rooney and mentioned this statement "at some point in the conversation."  The government argues that the statement should also be admitted under Rule 803(3).  The proposed testimony

---

[9]Sanchez also testified that she observed Decorah with "puffy eyes" on one occasion but denied seeing black eyes.

[10]At some point, the evidence of domestic violence received as Rule 404(b)(2) evidence is prejudicially cumulative, especially when its purported purpose is to "explain the history of the" relationship between Decorah and Rooney.

recounts the past statement of Rooney, not Decorah's then-current mental or emotional condition. The fact Decorah stated she was upset may be admissible, but not the reasons (which occurred in the past). Even if admissible under Rule 803(3), the Court would, on balance, exclude this statement under Rule 403.

### H.      Maribeth Whitewing

Maribeth, also from Wisconsin, was a family friend of Decorah for approximately seventeen years. Maribeth met Decorah through her cousin Navada and knew that the two were friends.

The testimony sought to be elicited from Maribeth is three-fold. First, Maribeth testified that on one occasion (before M.D.'s birth), Navada came to her house with Rooney and Decorah, who were reportedly arguing in their vehicle. Maribeth reportedly went outside to see what was happening and observed Rooney on top of Decorah holding her down with his arm across her upper-chest area. Decorah was screaming and when Maribeth opened the vehicle door, Rooney got off of Decorah.

Second, Maribeth testified that she visited Decorah and Rooney at Decorah's mother's house in Wisconsin shortly after M.D. was born in July 2016. Maribeth testified she walked in as Rooney held Decorah by the hair and slapped her.

Third, Maribeth testified about a video call with Decorah in March 2020 on which Decorah stated that "if anything bad ever happens to me, it's going to be because of him."

Maribeth reported firsthand observations of the first two incidents. The Court finds that both of these instances are proper evidence under Rule 404(b)(2) and further finds that the probative value of that evidence outweighs any prejudicial effect.

The statement made in March 2020 video call is hearsay. The only exception urged by the government is under Rule 803(3). Maribeth testified that during the phone call Decorah exhibited a number of different emotions and confided that she and Rooney had

been in a fight the night before.[11]  In those circumstances the statement that "if anything bad happens to me it's going to be because of him," would fall within Rule 803(3), as it is her then existing belief—not a recitation of anything Rooney stated.

Based on the foregoing, Rooney's motion is granted in part and denied in part as set forth in this Memorandum and Order.

IT SO ORDERED.

Dated this 26th day of October 2021.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

---

[11]The government correctly does not argue Rule 803(1) or (2) as an exception here, given the statement was of a "fight" the night before.  To the extent the government seeks to offer testimony of the observation of any bruising on Decorah's face during the Facebook chat, that evidence is admissible under Rule 404(b).